HILDUR P. JOHNSON'S ADMR. *v.* RUTLAND RAILROAD COMPANY.

May Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed January 23, 1919.

*Railroads—Crossing Accident—Sufficiency of Evidence—Lookout for Travelers—Negligence of Engineer—Question for Jury—Contributory Negligence of Child—When Question of Law or Fact—Parent's Negligence—Not Impulable to Child.*

In an action against a railroad company for the death of a girl nearly seven years old struck and instantly killed by one of defendant's engines at a highway crossing; *held*, that the evidence was sufficient to warrant the finding that, at the time of the accident, the decedent was a traveler on the highway and not a trespasser on defendant's right of way.

It is the duty of a railroad company to maintain a reasonable lookout for travelers at a highway crossing, and the extent of the duty, among other things, will depend upon the amount and kind of travel over the crossing, and the presence or absence of safeguards, such as flagmen, gates, or electric signals.

Whether the engineer exercised reasonable diligence in looking out for travelers approaching the crossing, and whether his failure to do so was a proximate cause of the accident, were questions for the jury.

In encountering danger, a child of tender years is not required to exercise the same amount of care as that exacted of an adult, but must exercise the care reasonably to be expected of children of like age, capacity, and experience.

The time when a child is capable of negligence is not a mere matter of age, but depends upon the circumstances of the particular case, especially his mental development and previous training and experience.

A child may be of such tender years that he cannot be guilty of contributory negligence as matter of law, or he may be so mature in age and intelligence that the question of his contributory negligence is one of law and not of fact; between these limits are the cases where the question of his contributory negligence, according to the circumstances of the particular case, is one of fact for the jury.

The question whether the decedent was guilty of contributory negligence was one of fact for the jury.

Even if the mother of the decedent was negligent, her negligence could not be imputed to the child; and, being remote, it would not defeat a recovery for her benefit.

ACTION ON THE STATUTE to recover damages for the mother of a child killed by being struck by one of defendant's engines at a public highway crossing. Plea, the general issue. Trial by jury at the March Term, 1916, Rutland County, *Fish*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Lawrence, Lawrence & Stafford* for the defendant.

*M. C. Webber* and *J. P. Leamy* for the plaintiff.

TAYLOR, J. . Hildur P. Johnson, a girl six years and nine months old, was struck and instantly killed by an engine attached to one of the defendant's trains at a highway crossing in the city of Rutland on September 29, 1915. She was survived by her mother, for whose sole benefit, as next of kin, this action is brought. There was trial by jury, with verdict and judgment for the plaintiff. At the close of the evidence the defendant moved for a directed verdict on several grounds. In overruling the motion the court held that there was evidence for the jury, as substantive grounds of recovery, whether the whistle was blown or the bell rung, whether the headlight on the engine was lighted, and whether a sufficient lookout was maintained. The jury found by special verdicts that the defendant was not guilty in respect of signals by bell or whistle, but that there was negligence in the other respects claimed. After verdict, and before judgment, the defendant, by several motions, moved to set aside the special verdicts respecting the headlight and lookout, and for judgment in its favor, on the ground that there was not sufficient evidence to go to the jury on those questions. These motions were severally overruled. Under exceptions taken to the action and ruling of the court, the defendant now claims a reversal and judgment in its favor, basing its claim on the propositions, in substance, (1) that there was no evidence tending to show that the decedent was a traveler on the highway, and at the time of the accident crossing defendant's track in the highway, and not a trespasser; (2) that there was no evidence tending to show that the defendant was guilty of negligence proximately contributing to the accident in the respects claimed in the declaration on which the general verdict must stand, *viz.*, want of a headlight or of a sufficient lookout; (3) that there was no evidence tending to show that the decedent exercised due care in approaching and crossing the track where the accident happened, but that the evidence shows, as matter of law, negligence on her part contributing to the accident; (4) that the evidence fails to disclose freedom from contributory negligence on the part of the beneficiary.

We pass on over, without consideration, any question there may be as to whether the exceptions to the action of the court in overruling the motions made after verdict are available. No claim is made that the questions argued are not fairly raised by the exceptions, and we will so treat them.

1.  The accident occurred at what is known as the Temple crossing, where West Street, in the city of Rutland, crosses three railroad tracks at grade. The northerly track is the defendant's main line. Next south, and parallel with it, is the main line of the Delaware & Hudson Railroad Company, and still farther south is a sidetrack, owned and operated by the latter company. The tracks at this point run practically east and west, and West Street crosses them diagonally from the southeast to the northwest. The engine that struck the decedent was hauling the regular passenger train between Burlington and Rutland, due to arrive at the station in Rutland at 6.10 p. m., and at the time in question was running about five minutes late. The decedent had been playing at the house of a girl friend on West Street, about 800 feet from the crossing, and had started for her home some distance north of the defendant's railroad. Her direct route home would take her over the Temple crossing. So far as appeared, when she was last seen alive she was about 420 feet from the crossing, and was walking alone on the sidewalk in West Street toward the crossing. No one testified to seeing the accident. Soon after the train passed the crossing her mangled and lifeless body was discovered in the ditch on defendant's right of way just north of the track, and about 15 feet east of the planking at the crossing. Blood was found on the rim of the pilot to the engine, "the left-hand corner of the pilot on the lower end of it."

The evidence was ample to warrant the jury in finding that the decedent was at the time of the accident a traveler on the highway and not a trespasser. It could reasonably be inferred from the position in which her body was found, and the blood upon the engine, that she was struck on the crossing as she was nearly over the track. The time of day (it was approaching dark), the elapse of time since she was last seen, and the manner in which she was then proceeding toward the crossing make it probable that she continued on her way toward home, and had not stopped to play on the crossing or strolled out of the highway along the defendant's track.

2.  So far as material to the present inquiry, the negligence alleged was failure to give the usual crossing signals, failure to maintain a suitable lookout, and failure to light the headlight of the engine. That there was evidence tending to show that the whistle was not sounded and that the bell was not rung for

this crossing cannot be questioned. It follows that, so far as the defendant's negligence was concerned, the motion for a directed verdict was properly overruled. It cannot be said that there was no evidence tending to show that the headlight was not lighted; but the conclusion we reach as to the other ground of negligence makes it unnecessary to consider this as a substantive ground of recovery.

It was the unmistakable duty of the defendant to maintain a reasonable lookout for travelers at the crossing. What would answer the requirements of the rule in this regard would depend, among other things, upon the amount and kind of travel over the crossing reasonably to be expected, and the presence or absence of safeguards, such as· flagmen, gates, or electric signals. See *Carrow* v. *Barre Railroad Co.*, 74 Vt. 176, 52 Atl. 537. The only evidence in the case as to the care exercised in this regard as the engine approached the crossing came from the engineer and fireman, who were the only persons on the engine. The former testified that he was in his seat on the right-hand side of the engine, and from the time he left Center Rutland until he passed over the crossing he was looking ahead; that as he approached the crossing he saw no one; that he first learned that a child had been killed near the Temple crossing several minutes after the train reached the Rutland station; that as he approached the crossing he did not notice some freight cars standing on the D. & H. siding. The fireman testified that he had been firing the engine as the train pulled out of Center Rutland; that as they were approaching the Temple crossing he was "sweeping up the deck"—the space between the fire box and the coal pit; that he had not been looking out; that it would be his duty to look out on his side of the engine when he had time from his other duties; that it was his duty to sweep up the deck, but could have done this after reaching Rutland; that he did not know about the accident until the next morning.

The track over which the engine was approaching was straight for more than eighty rods. Two freight cars, standing on the D. & H. siding a little west of the crossing, alone obstructed a clear view of the approach to the crossing over which the decedent had to pass to reach the point of collision. It was nineteen feet from the north rail of the sidetrack to the south rail of the defendant's track. For this distance and

more a person so approaching the point of collision would be within the unobstructed range of vision of the engineer. Whether the decedent covered this distance walking slowly, as the plaintiff's evidence tended to show she was proceeding along the street when last seen, or whether she darted out from behind the freight cars, as defendant's counsel argue she may have done, it is evident that, for a sufficient time for effectual action, she was where the engineer could readily have discovered her, if it was as light as the defendant's evidence tended to show. His failure to do so was wholly unexplained unless, as plaintiff's evidence tended to show, it was due to darkness and the absence of a headlight on the engine. ' Whether in the exercise of reasonable negligence in looking out for travelers approaching this crossing, the engineer should have discovered the decedent, and whether his failure to do so was a proximate cause of the accident, were clearly questions for the jury. The child had nearly cleared the track when struck. A moment's delay by slackening the speed of the train, or an additional warning by the whistle, might have averted the accident. It was for the jury to say how the fact was.

3. It is urged in support of the claim as to contributory negligence that the decedent was bound to exercise some degree of care for her own safety, and that there was no evidence tending to show that she was not guilty of negligence proximately contributing to the accident. Counsel do not disagree as to the amount of care required of a child of tender years. It is everywhere held that it is not the same as that exacted of an adult in the same circumstances. In case of an adult there is a fixed and well-recognized standard by which to measure the degree of care required; but in case of a child no such standard has been, nor well can be, established. As to the latter the element of capacity to understand and appreciate the danger to which he is exposed always enters into the inquiry. The rule, as generally stated, is that a child, who has arrived at a sufficient age to be capable of some degree of caution for his own safety, must exercise the care reasonably to be expected of children of like age, capacity, intelligence, and experience in similar circumstances. *Illinois Central R. R.* v. *Johnson*, 221 Ill. 42, 77 N. E. 592; *Chicago City Ry. Co.* v. *Wilcox* (Ill.) 24 N. E. 419, 8 L. R. A. 494. See also 20 R. C. L. 123-127, and 22 R. C. L. 974, 1018.

The evidence bearing upon this phase of the case tended to

show that the decedent was bright and alert; that her eyesight and hearing were good; that she had attended school one year, and went to school and on errands for her mother unattended; that she had lived in the vicinity of the crossing three or four years.   There was no other evidence to show her familiarity with the crossing and its dangers, and no evidence of instructions as to what caution to take for her safety when crossing the tracks. At the time in question decedent's view to the west, as she approached the crossing, was obstructed first by a high bank south of the tracks, and then by the two box cars standing on the siding.   After passing the sidetrack the view in the direction in which the train was approaching was unobstructed and there was nothing to interfere with sight and hearing.   It was up-grade toward the crossing, and the engine was working steam, with the attendant noise, until the crossing was reached.   The jury found by their special verdict that the whistle was blown 80 rods from the crossing, and that the bell was rung from that point until after the engine crossed West Street.   There is an entire lack of evidence as to what, if anything, the child did after passing the point 420 feet from the crossing.

It must be conceded that, if the decedent was of sufficient maturity and capacity to be charged with the duty of exercising active care for her own safety, the plaintiff would have the burden of proving that she exercised the degree of care reasonably to be expected of children of like maturity and capacity, and must produce some evidence from which the jury would be justified in inferring this fact.   Conceding the requisite capacity, it would be difficult to justify the submission of the question of contributory negligence to the jury on the evidence in this case. Manifestly the decedent must have heard and, if she looked, must have seen the train approaching as she went upon the track. This conduct, unexplained, would leave no room for the jury reasonably to infer that she was exercising even the slightest care for her own safety.   It remains to consider whether contributory negligence should be imputed to the decedent as a matter of law, considering her age, and the evidence as to her capacity to understand and appreciate the danger which she encountered.

It is a general rule that contributory negligence will not be imputed to children of tender years.   This rule is based upon the fact that they are not deemed capable of exercising care.

But at what age children are to be considered *sui juris* as to negligence, so as to be capable of contributory negligence, is a question of much difficulty, and very naturally has occasioned considerable difference of opinion. *Chicago City Ry. Co.* v. *Tuohy*, 196 Ill. 410, 63 N. E. 997, 58 L. R. A. 270. While it is pretty generally held that children under six years of age cannot be charged with negligence as a matter of law (29 Cyc. 537), cases can be found, some of which are cited by the defendant, where children under that age have been held capable of exercising care in the circumstances of the particular case. The reported cases disclose a disagreement increasing with the age until the seventh year is reached; after which, until the child reaches fourteen, capacity is generally held to be a question of fact. Some courts have sought to simplify the question by holding that all children under the age of seven years should be deemed incapable of any care or discretion, and so, as matter of law, cannot be guilty of contributory negligence; while children between seven and fourteen years of age will be presumed to be *non sui juris* as to negligence, making it, where there is evidence of capacity, always a question of fact for the jury. This rule is sometimes said to be analogous to the rule of the common law respecting capacity to commit crime. Many of the cases are collected in 20 R. C. L. 127; notes 1 Ann. Cas. 859, 17 Ann. Cas. 353, and Ann. Cas. 1913B, 969.

We are not aware that this Court has ever before been asked to declare itself upon the seven-year rule. However, our cases hitherto have not proceeded upon the theory that the time when a child was capable of negligence was a mere matter of age. Thus, in *Robinson* v. *Cone*, 22 Vt. 213, 225, 54 Am. Dec. 67, it was said of a child three years and nine months old, that all that was to be required of him was the care and prudence equal to his capacity, leaving it a question for the jury. In *Bottum's Admr.* v. *Hawks*, 84 Vt. 370, 385, 79 Atl. 858, 864, 35 L. R. A. (N. S.) 440, Ann. Cas. 1913A, 1025, where the decedent was a child five years old, it was said, "When the question of his contributory negligence arises, his age, intelligence, and want of experience are to be considered"; while in *Howe* v. *Central Vermont Ry. Co.*, 91 Vt. 485, 493, 101 Atl. 45, it is said, of a child two years and seven months old, that she was of such tender years as to be incapable of exercising care.

There is little, if any, support for the rule by the analogy.

Capacity to commit crime, involving as it does discretion to understand the nature and illegality of the particular act constituting the crime, is one thing, and capacity to care for one's personal safety is another, and quite a different thing. It is a matter of common knowledge that many children under seven years of age have some intelligence of situations and circumstances affecting their personal safety. While the rule has the merit of simplicity, it is purely arbitrary, and lacks the sanction of reason and experience. When a child reaches a stage of development at which he should be deemed capable of exercising judgment and discretion respecting his personal safety, is, from its very nature, incapable of arbitrary determination. The test of age alone is not sufficient. Much depends upon the circumstances of the particular case, especially the mental development and previous training and experience of the child.

A more satisfactory doctrine, and one in harmony with our former decisions, is that a child may be of such tender years that he should be conclusively presumed incapable of judgment and discretion. On the other hand, he may be so mature in age and intelligence that the court should say as matter of law that he is capable of exercising some degree of care for his own safety under circumstances like those in question; in which case, under the rule that prevails with us, if there is no evidence that any care was exercised, the question of contributory negligence is one of law and not of fact. Lying between these limits, necessarily undefined as to age, are the cases where the question of capacity to encounter and avoid a given danger cannot be ruled as a matter of law, either that the child has or does not have any capacity for caution, or was capable or incapable of exercising care for his safety in the circumstances. In such cases capacity is purely a question of fact to be submitted to the jury on the evidence. This, in effect, is the view taken by those courts that do not adopt the seven-year rule. See *Sullivan* v. *Boston El. Ry. Co.,* 192 Mass. 37, 78 N. E. 382; *Grant* v. *Bangor Ry. & Elec. Co.,* 109 Me. 133, 83 Atl. 121; *Meserve* v. *Libby,* 115 Me. 282, 98 Atl. 784; *Berdos* v. *Suffolk & Tremont Mills,* 209 Mass. 489, 95 N. E. 876, Ann. Cas. 1912B, 797; 22 R. C. L. 1018; notes 66 Am. St. Rep. 43, 49 Am. St. Rep. 408-433, 14 Am. St. Rep. 590.

From what has gone before it will be seen that in the case of a child the question of capacity in its comprehensive sense is preliminary to the usual inquiry respecting contributory

negligence; for, unless such capacity is found, negligence will not be imputed. The controlling question here is, then, whether it should be held on the evidence as a matter of law, that the decedent had sufficient capacity to grasp understandingly the nature and extent of the danger which she encountered. We think it should not be so held, and that the case was for the jury on that question under proper instructions. No complaint is made touching the charge and we have no occasion to consider whether the question was properly submitted.

The defendant cites several cases in which children of varying ages between five and ten years were held guilty of contributory negligence. But the question depends so much upon other considerations than age, and is so controlled by the intelligence, experience, and previous warning and instruction of the particular child, that other cases afford little assistance. The circumstances of the cases cited were such that the court was able to say as matter of law, that the child was, in the circumstances, capable of exercising caution for his own safety, and that his conduct, judged by the standard of ordinary care shown by children of his age and capacity in like circumstances, should be deemed negligent. In all the cases the injury resulted from collision in the highway, either with teams or street cars, and the conduct of the child contributing to his injury was made to appear. In some, at least, the court based its decision upon the fact that the child "unreasonably, intelligently, and intentionally run into danger." 'They are cases which the courts deciding them did not consider as falling in the middle ground between conclusive incapacity and undoubted capacity to understand and avoid the particular danger.

It is urged that, if the decedent did not have intelligence and experience enough to exercise some degree of care, her mother, the sole beneficiary, was guilty of contributory negligence defeating the recovery, in permitting the child to go unattended to a house across the tracks to play. The mother was a widow with four children of school age living at home. She was accustomed to go out to work several days in the week. During her absence the oldest, a daughter of 16, prepared the meals and did the housework out of school hours. When the decedent returned from school on the afternoon in question the mother was away from home at work. She returned shortly before the time of the accident. The decedent went to the West Street

house to play without her mother's knowledge or consent, and, so far as appeared, without the knowledge or consent of the older children.

If the mother was negligent, which we hardly think the evidence tends to show, her negligence would not be imputed to the child (*Robinson* v. *Cone, supra; Ploof* v. *Burlington Traction Co.*, 70 Vt. 509, 41 Atl. 1017, 43 L. R. A. 108); nor would it defeat the recovery for her benefit, for, at most it was remote and not proximate. *Ploof* v. *Burlington Traction Co., supra; Bottum's Admr.* v. *Hawks, supra.*

<div align="right">

*Judgment affirmed.*