TYLER v. WEED.

1. Negligence—Infants—Contributory Negligence.

In minor's action against motorist to recover for injuries he sustained when six years and eight * months of age while crossing a street on his way home from school, instruction leaving question of his contributory negligence for jury which was also instructed to consider his age, ability, intelligence and experience in determining whether he conducted himself as a child of his age, ability and understanding would reasonably have been expected to, under like circumstances, *held,* not reversible error.

2. Automobiles—Speed—Evidence—Opinion Testimony of 14-Year Old Boy.

Exclusion of testimony of 14-year old boy as to his opinion as to speed of defendants' car which injured plaintiff *held,* reversible error where witness testified he had observed the speedometers in automobiles in which he had ridden and could give an opinion as to how fast defendants' car was going based upon his experience in observing automobiles driven on the streets, as he was sufficiently qualified for the purpose and the weight and credibility of such testimony were for the jury.

Potter, J., dissenting.

Bushnell and McAllister, JJ., dissenting in part.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted January 6, 1938. (Docket No. 54, Calendar No. 39,704.) Decided June 30, 1938. Rehearing denied October 3, 1938.

Case by Edmund Dean Tyler, by his next friend, Winifred Tyler, against Mattie N. Weed and Burt T. Weed for personal injuries sustained when struck by an automobile while crossing at a street intersec-

---

* See footnote, *post,* 461.—Reporter.

tion. Verdict and judgment for defendants. Plaintiff appeals. Reversed.

*Russell W. Conroy* (*Allen & North,* of counsel), for plaintiff.

*Joseph W. McAuliffe,* for defendants.

McALLISTER, J. (*dissenting in part*). This is an action for damages for negligence, brought by an infant suitor by his next friend. On September 26, 1935, just before noon, plaintiff, a child six years and eight months old,[*] was returning from school to his home in Battle Creek. He was walking in a westerly direction on the north side of Webber street, which intersects Meachem avenue, a north and south street. When plaintiff came to the intersection he stepped from the curb and, it is claimed, looked north, took a step or two and then looked south, and started running diagonally across Meachem avenue in a northwesterly direction.

Defendant, a woman 65 years old, was driving an automobile on Meachem avenue proceeding in a northerly direction. She testified that when she reached the intersection she glanced to the sidewalk on the right, but saw no one on the corner; but she states that when she arrived in the middle of the intersection she first saw plaintiff two feet from the curb on the right. From the time she first saw plaintiff until she applied her brakes, her car travelled approximately 25 feet. The plaintiff was struck by the left fender of defendant's car after he had run in a northwesterly direction a distance of 51 feet, and after he had passed the center line of the street

---

[*] Birth certificate received in evidence showed birth of boy occurred on January 18, 1929, six years, eight months and seven days before accident.—REPORTER.

he was trying to cross. As a result of the accident, plaintiff suffered severe and permanent injuries, including fractures and the loss of an eye.

The case was tried before a jury and resulted in a verdict of no cause of action. On appeal the plaintiff claims error on the part of the trial court in submitting to the jury the question of his contributory negligence, because he was under seven years of age, and also asks reversal on the court's instructions to the jury relative to acts done in emergency and the standard of care required of the defendant.

Plaintiff's right to claim that he was incapable of negligence as a matter of law, is now challenged by counsel for defendant, on the ground that it is made for the first time on appeal; and it is submitted that such claim, not raised in the court below, comes before us too late to save the question for review. Plaintiff's counsel did not request instructions to the jury in this regard, and the question of plaintiff's incapacity for negligence as a matter of law was indirectly, but not specifically, brought to the attention of the trial court on the motion for a new trial, as hereinafter appears.

It is true that formerly it was the duty of counsel to call such error to the attention of the trial court. But such practice was changed by statute—3 Comp. Laws 1929, § 14311 (Stat. Ann. § 27.1040).

In *Totten* v. *Totten*, 172 Mich. 565, 580, this court said, in considering a similar objection:

"If manifestly an inadvertence, as indicated to those listening to the charge, it would seem to be the duty of plaintiff's counsel, rather than defendant's, to call the attention of the court to it. Under the practice which formerly prevailed, it would have been the duty of counsel for defendant to then take exceptions, thereby calling the attention of the court

to the matter and thus give opportunity to make correction; but latterly, for reasons which we do not seek to fathom, the legislature provided that it is not necessary in such cases to except to the charge given to the jury, but the party deeming himself aggrieved by any portion of the charge may remain silent, and subsequently, when removing the case to this court for review, assign his errors upon the charge.''

Error may now be assigned upon the charge without bringing the matter to the attention of the trial judge. *Goodman* v. *Fangert,* 204 Mich. 66. The right to review an assignment of error is not lost because of failure to request that the subject be covered in the charge. *Morain* v. *Tesch,* 214 Mich. 699.

Defendant further contends that such claim of error is not included in the statement of reasons and grounds for appeal and therefore is not before this court for consideration. Plaintiff's fourth assignment of error states:

''The court erred in overruling plaintiff's motion for a new trial for the reason assigned in the second paragraph of said motion in charging as follows:

'' 'However, a person violating any of said provisions is not liable to respond in damages unless her negligence in that regard was the proximate cause of the accident and there was no contributory negligence on the part of the party asking to recover. If you find the plaintiff was negligent in any manner and his negligence contributed to the accident, then plaintiff could not recover.' ''

While such assignment did not explicitly claim that the trial court erred in not holding that plaintiff was presumed to be free from negligence as a matter of law, it nevertheless set forth that the court erred in charging the jury that plaintiff could not recover if he were negligent in any manner, if such negligence contributed to the accident.

We believe that the ground upon which reversal is sought, is fairly indicated and sufficiently complies with the rule, that errors, which are assigned, must be fairly indicated if not precisely stated. *Genrow* v. *Modern Woodmen of America,* 151 Mich. 250. So presented, it raises the question of whether infant plaintiff in this case, being under the age of seven years, is conclusively presumed to be incapable of negligence; and whether the court erred in submitting such claimed negligence of the infant plaintiff as a question of fact to be determined by the jury.

On this proposition there is a conflict of authorities between those that hold that the question of an infant's negligence is always to be determined as a question of fact regardless of age, and those that follow the so-called common-law rule that an infant under the age of seven years is conclusively presumed to be incapable of negligence.

This proposition, in its various phases, has been before our court on numerous occasions.

In *Thornton* v. *Ionia Free Fair Ass'n,* 229 Mich. 1, a case involving the alleged contributory negligence of a boy 14 years old, the Court said:

"Plaintiff had passed the years of tender childhood which is protected from contributory negligence by the presumption thrown around its assumed lack of experience, discretion and capacity to recognize and understand danger. The general rule imputes that lack of capacity up to the age of seven years, and some courts have applied it as a *prima facie* presumption until the age of 14 is reached, putting the burden of proof on those claiming contributory negligence."

This would seem to affirm the common-law rule in our State. However, the Court further said:

"But age alone is not the conclusive test. Experience and capacity are also to be considered. As was said in *Trudell* v. *Railway Co.*, 126 Mich. 73 (53 L. R. A. 271), where the injured child was 7 years and 4 months old, 'Age is not the true test in such cases. It is the intelligence of the boy, not his age, that must control.' By the tests of capacity and experience children younger than 7 years have been guilty of contributory negligence as a matter of law under the undisputed facts."

The Court in this latter statement, which was obviously *dicta,* referred to *Hayes* v. *Norcross,* 162 Mass. 546 (39 N. E. 282). Such rule has never heretofore been followed in Michigan; and in the case then under consideration by our court, the child was 14 years old and the principle as applied to a child under 7 years of age was not involved.

In *Barger* v. *Bissell,* 188 Mich. 366, a child six years, ten months and ten days of age was injured in an automobile accident and received a judgment against the defendant driver, which came before this court for review. The defendant asked reversal on the ground that there was no evidence showing, or having any tendency to show, negligence on the part of the defendant and that the verdict was contrary to the great weight of the evidence. The court reversed the judgment on the ground that there was no showing of negligence on the part of the defendant. But in passing on the case, the court said:

"It is manifest that she (the infant plaintiff) exercised no care at all, and, if an adult, she would clearly be barred from recovery by her own carelessness and negligence; but with a child of her age the question of contributory negligence precluding recovery, in case the defendant is shown guilty of negligence, is usually an issue of fact for the jury. In

passing upon the legal questions raised here, the materiality of her conduct in thus suddenly coming upon the street close in front of a passing automobile, in the middle of a block, is its bearing upon the question of defendant's negligence. * * * Drivers upon highways are not held as insurers against accidents arising from negligence of children or their parents, and though in law such negligence in a particular case may not be a defense, as contributory negligence, for a driver also guilty of negligence, the fact of an accident does not establish liability or raise a presumption that the driver is negligent."

The question again came before the court in *Zylstra* v. *Graham,* 244 Mich. 319, involving a child six years and three days old, who was killed in an automobile accident. A judgment for plaintiff was appealed on the ground that the child was guilty of contributory negligence as a matter of law. There was no satisfactory proof as to whether the child had looked for an approaching vehicle before crossing the street, or whether he saw the defendant's automobile before he was struck. The court said:

"If this boy was old enough to justify the presumption that he gave the situation any consideration at all, it must be presumed in the absence of testimony indicating otherwise, that he assumed any person operating a motor vehicle would regulate the speed and control of his machine as the surrounding circumstances reasonably required. * * * In view of the tender years of this boy, the trial judge was wholly justified, under the facts of this case, in refusing to direct a verdict in favor of defendant on the ground that the deceased was guilty of contributory negligence."

While the court, in these cases, did not hold that the infant plaintiff was conclusively presumed to be incapable of contributory negligence, neverthe-

less no burden was placed upon such plaintiff to show freedom from negligence, and it was clearly asserted that while such alleged negligence of an infant may not be pleaded as defense, nevertheless, it had a bearing upon the question of whether defendant was guilty of negligence.

*Easton* v. *Medema,* 246 Mich. 130, marked a turning point in our decisions involving the question of contributory negligence of infant plaintiffs. In that case an evenly divided court disagreed upon whether the contributory negligence of a child five years and eight months old was a question for the jury, and Mr. Justice FEAD in his opinion stated the following:

"Regardless of the general principles governing care of children and the weight and conflict of authority as to the age at which a child may be charged with contributory negligence (45 C. J. p. 1002), it is settled law of this State that a child under 6 years of age cannot be so charged. *Johnson* v. *City of Bay City,* 164 Mich. 251 (Ann. Cas. 1912B, 866), where the child was 5 years, 4 months old; *Love* v. *Railroad Co.,* 170 Mich. 1, the child being 5 years and 5 months of age; *Beno* v. *Kloka,* 211 Mich. 116, where the child was 5 years and 11 months of age, 3 months older than plaintiff here, and his alleged negligence was similar to that alleged against plaintiff."

Following *Easton* v. *Medema, supra,* it was held that a child four years and three months of age was too young to be guilty of contributory negligence, *Door* v. *Valley Lumber Co.,* 254 Mich. 694; that an infant three and one-half years of age could not be guilty of contributory negligence, *Edgerton* v. *Lynch,* 255 Mich. 456; that a child five years and eleven months old could not be guilty of contributory negligence as a matter of law, *Micks* v. *Norton,* 256 Mich.

308; and it was held in *Benedict* v. *Rinna*, 257 Mich. 349, that the question of infant plaintiff's contributory negligence was not involved, he being only five years and eight months old; and later by unanimous opinion it was held in *Guscinski* v. *Kenzie*, 282 Mich. 204, that a boy five years old was too young to be guilty of contributory negligence.

Since Mr. Justice Fead's opinion in *Easton* v. *Medema, supra,* there has been no mention by the court of any factor other than age in determining the capacity of a child under seven years, to be guilty of negligence. However, the general question of an infant's negligence again arose in *Brinker* v. *Tobin*, 278 Mich. 42, a case involving a girl seven years and seven months old.

The trial court had directed a verdict for the defendant and against the guardian of the child on the ground that as a matter of law under the particular circumstances of that case, the child had been guilty of contributory negligence. On appeal the trial court was affirmed, and the court in its opinion quoted with approval the following from *Mollica* v. *Railroad Co.,* 170 Mich. 96 (L. R. A. 1917 F, 118), a case involving a child nine years and six months old:

"Where the plaintiff is an infant of such tender years as to be without discretion, contributory negligence cannot be imputed to him; and such is the general presumption where the child is under the age of 7 years. It is also held by some authorities that such presumption obtains, *prima facie,* until the age of 14 is reached; but, where capacity is shown, the general rule of contributory negligence will apply. While in the case of a child between the ages of 7 and 14 years the allegation of age might raise some presumption which tends to remove the imputation of neglect, it is mainly a matter of pleading; and the

fact, when proven on the trial, does not establish that freedom from negligence essential to recovery.''

If the general presumption is that contributory negligence cannot be imputed to infants under the age of seven years as repeatedly announced by our court, we are faced in this case with such a general presumption. To hold that contributory negligence can be imputed to this infant plaintiff is to violate the rule which has been apparently unquestioned in this court up to the present time. No argument is advanced by counsel for defendant why this general presumption should be set aside, unless we are to overrule our past decisions; and no argument has been given why this case should be considered an exception to the general presumption.

In *Beno* v. *Kloka*, 211 Mich. 116, the court said:

''We are of the opinion that it was reversible error for the trial court to submit to the jury in any way the question of contributory negligence of the plaintiff. He was 5 years and 11 months of age.''

From these cases we have adjudications holding that an infant is in law incapable of negligence under the age of six years, but can be guilty of negligence as a matter of law if past seven years and seven months of age. Defendant, however, argues that Mr. Justice FEAD in *Easton* v. *Medema, supra,* laid down the rule that six years was the maximum age to be considered in determining whether an infant was incapable of negligence. We do not consider that opinion to express such a limitation but rather to be merely an application of the common-law rule in that particular case, where plaintiff happened to be under six years of age.

According to authorities following the common-law rule, the age of seven years is arbitrarily fixed

as the age under which children are incapable of negligence.

"We are of the opinion that there was no error in giving the second instruction, and hold, in analogy to the rule of the common law, which exempts children under seven years of age from criminal responsibility, that up to the age of seven years 'a child is incapable of such conduct as will constitute contributory negligence, and that the court may so declare as a matter of law.'" *Chicago City R. Co.* v. *Tuohy,* 196 Ill. 410, 427 (63 N. E. 997, 58 L. R. A. 270).

"As plaintiff was under seven years of age when injured, no question of contributory negligence on her part is involved." *Chicago City Railway Co.* v. *Hackett,* 136 Ill. App. 594.

In *McDonald* v. *City of Spring Valley,* 285 Ill. 52 (120 N. E. 476, 2 A. L. R. 1359), the court said:

"From time immemorial the status of a minor of tender years has been recognized in law to be different from that of one of more mature years. The law recognizes that up to the age of seven years a child is incapable of such conduct as will constitute contributory negligence, and our courts have uniformly so stated the law in their instructions to the juries."

In an extensive note on the subject in L. R. A. 1917 F, 49, it is said:

"There seems to be considerable ground for the position that as matter of law a child under seven years of age is incapable of contributory negligence, not especially because of any analogy to the criminal law that a child under that age cannot commit a crime, although this reason is frequently given, but because, in the case of a child under seven years of age, there is lacking that discretion and judgment, and that appreciation of the probability and extent

of the danger, which, as has been shown above, are the essential elements in determining whether a child has exercised due care. And if these elements, are not merely knowledge, receive proper consideration in determining the question of the age at which the rule of conclusive presumption of incapacity ceases to be applicable, it seems that in some cases a higher age limit should have been adopted. It was said on this point in an Alabama case,* in which the court was of the opinion that the doctrine of contributory negligence was not applicable to a child under seven years of age (the child in this instance, however, being only three and one-half years old): ''It would seem to follow that a child under the age of seven years should be absolutely exempt from the operation of the principle. Thought, discretion, judgment, or will cannot be legally imputable to him—he cannot be adjudged guilty and punished for crime. * * * Not having an 'independent will,'—incapable of choosing between the right and the wrong, between care and rashness, the creature of instinct and impulse,—there is no ground on which to base negligence. From him duties to others are not exacted, while duties to him are recognized and compulsorily enforced. Negligence has the same significance, whether applied to a defendant as creating a cause of action, or to a plaintiff in bar of an action for a redress of injuries. * * * A child below the age of seven years, irresponsible, incapable of discretion, could as well be subjected to liability for negligence as to permit one fully *sui juris* by the imputation of negligence to escape the responsibility of his own wrongful act. The child owes to him no duty, because incapable of performing it.''

This rule was transplanted from the civil law to our common law at an early period. In Austin's Jurisprudence the author, in discussing conclusive presumptions of law, mentions the case of infants under the age of seven years and says:

---

* See *Government Street R. Co.* v. *Hanlon,* 53 Ala. 70.—REPORTER.

"Here, according to the Roman Law, and (semble) according to our own, the infant is presumed *juris et de jure* incapable of unlawful intention or culpable inadvertence. His incapacity is inferred or presumed from the age wherein he is; and proof to the contrary of that pre-appointed inference is not admissible by the tribunals." 1 Lectures on Jurisprudence, John Austin (5th Ed. 1929), p. 492.

In 4 Blackstone's Commentaries, § 23, the law of England on the subject is stated as follows:

"Under seven years of age, indeed, an infant cannot be guilty of felony, for then a felonious discretion is almost an impossibility; but at eight years old, he may be guilty of a felony."

The author then mentions the case where a boy eight years old was tried for burning two barns and was found guilty, condemned and hanged accordingly. We look upon such a proceeding as barbarous, and find it difficult to believe that such cruelty under the masquerade of law and justice could be accepted in the seventeenth century England. The impressive fact, however, is that in such times of pitiless jurisprudence, there was an emphatic recognition that the age of seven was an age of innocence, even though after the age of seven, the child could be executed for a capital crime of which he would have been blameless a twelve-month previously.

How well founded in the experience of countless centuries, and in the observation of philosophers of antiquity this understanding of incapacity and blamelessness of childhood was, is seen in modern thought and the researches of outstanding scholars of recent years; and it may be pertinent to remark that our State follows, whether consciously or not, the classic idea in the matter of the capacity of

childhood for education. According to the statutes providing for the compulsory education of children, the age of seven years is arbitrarily established as the time at which such education must commence. 2 Comp. Laws 1929, § 7526 (Stat. Ann. § 15.566).

In cases on review, courts do not usually seek guiding principles from general authorities outside the law. It is the general rule that scientific works and books cannot be read in evidence on the trial of a case, although it is a practice of some States, and one sustained by very respectable authority to allow attorneys during their argument to the jury, to read from books which have been proved to be standard works upon the subject. Jones, The Law of Evidence in Civil Cases (3d Ed.), p. 900, § 580. But the rule is to the contrary in Michigan. *People* v. *Hall,* 48 Mich. 482 (42 Am. Rep. 477).

This rule, and its implications, however, should not preclude a reviewing court from taking cognizance of authorities, generally accepted as outstanding and reputable, as to conclusions reached resulting from scientific observation and research, with the object of testing whether assumptions of fact, relied upon in decisions of cited authorities as self-evident, based presumably on reason and logic, and without supporting evidence, are justifiable.

What is there in actual fact, science, or research to justify a different treatment of children under the age of seven years from those that have passed this age? One cannot fail to be impressed with the fact that these conclusions which crystallized centuries ago regarding the special status of a child of this age, have been confirmed by present day observers and scientists in the specialized field of child care, education and psychology. In recent times, the studies of Alfred Binet, in France, Hans Gross, in

Austria, Jean Piaget, in Switzerland, and Maria Montessori, in Italy, have brought a new light upon the mysterious mind of the child, and have elucidated many of the obscure areas in the understanding of mental development and growth in infancy and adolescence.

What is remarkable in the conclusions arrived at by such research, is the fact that the age of seven years marks a transitional line in the mental development of children. In the copious and rich literature devoted to the subject, there repeatedly recurs the emphasis upon this age as marking the inception of thought and reason, the commencement of exchange of ideas, the beginning of concepts of justice. Authorities hold that this age marks the passage from the period of self-centered speech and thought to verbal understanding and social thought and cooperation. In short, the age of seven years can be said to be the threshold over which a human being passes from the realm of imagination and dream to the world of reality and fact.

Dr. Hans Gross, late professor of law of the Universities of Prague and Vienna, former judge of the law courts of Austria, and pre-eminent examining magistrate of Europe, referred to by Dean Wigmore as the scholar who has done more than any other man in modern times to encourage the application of science to judicial proof, says:

"Because the child is in the process of growth and development of its organs, because the relations of these to each other are different and their functions are different, it is actually a different kind of being from the adult. When we think how different the body and actions of the child are, how different its nourishment, how differently foreign influences affect it, and how different its physical qualities are,

we must see that his mental character is also completely different.'' Criminal Psychology, A Manual for Judges, Practitioners and Students, Hans Gross, p. 364, The Modern Crime Science Series, Boston, 1918.

''We cannot place ourselves at the point of view of the child; it uses indeed the same words as we do, but these words convey to it very different ideas. Further, the child perceives things differently from grown-up people. The conceptions of magnitude, great or small, of pace—fast or slow, of beauty and ugliness, of distance—near or far, are quite different in the child's brain, from in ours; still more so when facts are in question. * * * The horizon of the child being much narrower than ours, a large number of our perceptions are outside the frame within which alone the child can perceive. We know, within certain limits, the extent of this frame. * * * But in many directions we do not know the exact point where its faculty of observation commences or stops. At times we cannot explain how it does not understand something or other, while at other times we are astonished to see it find its bearings easily among matters thought to be well beyond its intelligence.'' Criminal Investigation, A Practical Textbook for Magistrates, Police Officers and Lawyers, p. 62, Hans Gross, London, 1924.*

To judge a child according to the standard and from the viewpoint of an adult is unjust, for the difference between the adult and the child is not to be sought in the immaturity and experience of the child; nor does the child differ from the adult by reason of its small knowledge and narrow outlook;

---

* See also, The Child's Conception of Causality; The Child's Conception of the World; The Language and Thought of the Child by Jean Piaget; The Development of Intelligence, Alfred Binet and Th. Simon; The Secret of Childhood, Maria Montessori; Huntington Cairns, The Child and the Law, in the New Generation, (1930).

he is a being with needs of his own and a mentality adapted to his needs.

These considerations bring us to the application of the standard of care required of the infant plaintiff in this case, as set forth in the following instructions of the trial court to the jury:

"I charge you that ordinary care has relation to the situation and condition of the parties, and varies according to the exigencies which require vigilance and attention, and when contributory negligence is sought to be attributed to a child, the child can only be held to that degree of care which may be reasonably expected from one under the same conditions and of the same sex, intelligence and judgment. I therefore charge you that the care and discretion to be used by the plaintiff in this case, Edmund Dean Tyler, a child of six years and nine months,* must be proportionate to his age and capacity to understand and ability to perform it, therefore in passing upon the question of whether or not the plaintiff was guilty of contributory negligence in this case you will consider all the testimony with relation thereto, his age, ability and intelligence and his experience to recognize and understand danger, and determine whether or not he conducted himself as a child of his age, ability and understanding would reasonably have been expected to, under like circumstances; and if he did, then he would not be guilty of contributory negligence. If, on the other hand, he failed to use that degree of care which a child of his age, ability and understanding would reasonably have been expected to exercise under like circumstances, then he would be guilty of negligence and if his negligence in that regard contributed to the accident, then he would not be entitled to recover."

Much has been written about "the careful and prudent man" as the standard of care in cases in-

---

* See footnote, *ante*, 461.—Reporter.

volving negligence and such standard has often been criticized as unreliable, logically indefensible and an unjustified fiction originally resorted to to evade problems of jurisprudence. Whatever the criticism, or whether it be merited, it has at least the virtue of being an attempt to arrive at an objective standard.

This cannot be said of the same standard when applied to the conduct of infants. In the case before us, the plaintiff was six years and eight months of age.* But the standard of care was not laid down as that of the ordinarily careful and prudent child of this age. The jury was instructed that in order to recover, such infant must conduct himself as a child of his age, ability and understanding would reasonably have been expected to act under like circumstances, taking into consideration *his* age, ability and intelligence.

This is a confusion of the objective standard of care, and the individual standard of care of a particular child. How can any juryman or judge know how a prudent child of such tender years should conduct himself, aside from the reflection of the prudent adult mind of what a child should do. Prudence and tender years are paradoxical and contradictory. How does one take into consideration the intelligence, ability and understanding of this particular child without proof of what such intelligence, ability and understanding actually are? How deceptive logical trappings may be, is well illustrated in the present case, where the record shows that the child was not even a witness; and from any available indications, may not even have been present during the trial. Yet the jury was obliged, in the course of its determination of these most essential issues, to arrive at a finding of what a prudent, careful child

* See footnote, *ante,* 461.—REPORTER.

at the age of six years, and eight months * would do under the circumstances, with which the infant in this case was confronted; and they were then obliged to determine the degree of intelligence, ability and understanding of this particular child in order to ascertain whether, taking into consideration such individual qualities, the infant plaintiff acted as a prudent, careful child would have acted in attempting to cross the street in front of the on-coming automobile. They were further to judge what this particular infant's intelligence, ability and understanding were, without hearing the child as a witness, and it may have been, without even seeing him. Any conclusion arrived at by the jury under such circumstances resulted from piling speculation upon the fiction of a fiction. Therefore, the common-law rule is interposed in behalf of this little boy in the tender years of early childhood, suffering blind-ness and permanent injuries to save him from being the victim of a fruitless and ritualistic determination of his rights.

The fact that the child was not a witness in this case, emphasizes, peculiarly, another reason for the rule so necessary to the protection of infants' rights. The burden of proving freedom from contributory negligence by his own testimony would be almost insuperable for a child barely emerging from baby-hood. It is a severe enough test for a mature person of intelligence. For a baby it is unthinkable. It would seem that such a consideration would be of especial importance where the party opposing the infant is the mature wrongdoer who inflicts the in-jury. While the jury might approach the determina-tion of such a question in a fair-minded attitude, it

* See footnote, *ante*, 461.—REPORTER.

would be more concerned with testimony of complex facts—time, distance, speed, exercise of caution—than with inferences that might be drawn to explain the child's inability to enlighten it on these points. The burden is too heavy for the small child, and in such an unequal contest the law does not permit a wrongdoer to take advantage of the infant's difficulty and inadequacy.

Our court, however, has never yet, on the ground of his own contributory negligence, repudiated the claim of an infant plaintiff under seven years of age for injuries received at the hands of a negligent wrongdoer. On the contrary, it has repeatedly affirmed recovery on the part of such an infant, even though, according to every known standard, the infant would have been guilty of contributory negligence, had the court given consideration in the slightest degree to such defense.

To adopt the Massachusetts rule in this case, we would be obliged to reverse our decisions dating back more than a quarter of a century to *Johnson* v. *City of Bay City, supra.*

Nor are we impressed with the argument that the common-law rule is unjustifiable because it is arbitrary. There is no unfairness from an arbitrary treatment of the matter when it is considered that the cause of the contributory negligence of the infant can come into consideration only after a determination that the defendant himself was negligent. For if the defendant was not negligent, there can be no recovery, as no one is liable for injuries resulting from the sudden and unexpected act of a child. *Czarniski* v. *Security Storage & Transfer Co.,* 204 Mich. 276; and if the defendant was negligent he

should not be allowed to escape on the ground that an infant who is not *fully* aware of the consequences of his acts, was also negligent.

The citizen is everywhere hedged about by legal qualifications and disabilities based upon arbitrary rules of age. The law fixes the age of 21 years under which infants are not liable upon their contracts; and in spite of varying degrees of intelligence and capacity, the same age is prescribed as a qualification for the right to vote. Infants can choose their own guardians at 14 years of age. (3 Comp. Laws 1929, § 15765 [Stat. Ann. § 27.2930]). The age at which persons can consummate a legal marriage is arbitrarily fixed by law. The age qualification for election to Congress is 25 years (U. S. Const., art. 1, § 2 [2]); to the senate, 30 years (U. S. Const., art. 1, § 3 [3]); to the presidency, 35 years (U. S. Const., art. 2, § 1 [5]). If there is any reason for arbitrary age qualifications or disabilities in law, they would certainly be as capable of justification when used in the protection of little children from the infliction of wrongs, as in any other situations above mentioned.

In such cases as the one before us, there are involved questions of broad social, as well as of legal import. In addition to the historic protection of the rights of children by the law, there is the further consideration that society should not be obliged to take upon itself the care and the rehabilitation of such injured children, together with the recurring expense resultant from a child's physical misfortunes, which are bound in such cases to continue throughout the lifetime of the injured person, because of the permanent nature of the injuries. If the defendant has been negligent in causing these

injuries, the public has an interest in seeing that the infant be recompensed for such loss, expense and care by the one responsible for the injuries, rather than that the entire expense be borne by the public, as so often eventually happens. This consideration applies more forcibly in the case of children of tender years as yet unprepared for the toil and effort necessary to secure a livelihood, than in the case of a mature person.

An illuminating article * on the subject of the incapacity of children in matters of negligence is found in a law review of recent years, in which the author, in discussing the question, under consideration in the case before us, says:

"The majority of the States set an arbitrary age limit below which no infant can be held guilty of contributory negligence. The minority sends every case to the jury except where the facts are undisputed and can result in but one conclusion. Age is the only fact considered by the majority. The minority treat age as just one of the many facts to be considered by the jury in settling that particular case before the court.

"Which view is preferable? Under which view is the infant accorded the greater amount of protection?

"The writer accepts the majority view for the following reasons: The majority view is administratively expedient. The possible danger of a shifting standard is avoided. The confusion and inconsistency which ofttimes mark jury decisions is eliminated. The law is crystallized and defined. The application of the majority view is simple.

"The majority view in setting an arbitrary age attaches full significance to the fact that infants as a

* Contributory Negligence of Infants, Louis H. Wilderman, 10 Indiana Law Journal, p. 427 (May, 1935).

class lack that judgment and discretion which comes with age and experience. While the infant may have knowledge of the possibility of injury when he runs in front of a moving trolley, the writer contends that he fails to consider the full consequences, the immediacy of the danger and the severity of the consequences. The infant acts on impulse. Seldom, if ever, does the infant stop to consider the full consequences of any act. The possibility that he may be crippled for life or even killed is not appreciated. All that concerns the infant is his present desire. Deliberation and a sensible choice of alternatives in the light of future consequences are not the attributes of one of tender years.

"The minority view fails to give adequate protection against this youthful deficiency in judgment and discretion. The tendency of the jury in considering the case before it is to attach importance to the fact whether or not the infant had knowledge of the possibility of present danger. The juror is impressed with the immediate facts and the infant's conduct in relation thereto and may not, unless clearly instructed by the court, go beyond those facts which are brought to his attention. The juror fails to consider whether or not the infant plaintiff would have done what he did in this case had he the ability to temper his impulsive action with the judgment and discretion which comes with age and experience. The public charge of tomorrow demands present protection.

"The negligent defendant placed the injurious force in operation. The infant was injured as a result of the defendant's acts. The courts are cognizant of the fact that the infant is not fully able to take care of himself and as a result has set a different standard of care for the infant than it has for the adult. If we agree that infants as a class are to be treated with leniency, why should we strive to relieve a negligent defendant whose only claim to be

absolved from liability is based on the alleged fault of that group whom we seek to protect? This argument is practically sound. The complications of modern civilization with its crowding traffic and premium on speed has lessened the odds in favor of safety for infants. Why decrease these odds any further by favoring that negligent adult who initiated the injurious force with knowledge of its capacity to do harm?''

Every consideration further impels a court to determine such questions involving little children from a humane standpoint unless restricted by precedent, vested rights, justice to the opposite party, or because of public policy. None of these considerations arise to prevent the application of the humanitarian common-law rule in cases involving children of tender years.

The rule contended for by defendant that the contributory negligence of the infant is always a question of fact regardless of his age, has been adopted by the Supreme Court of Massachusetts, and has come to be known as the ''Massachusetts rule.'' While we have the utmost respect for the distinguished tribunal of that commonwealth, we are constrained to differ with it in our determination of this question for several reasons. Among these, it may be mentioned that we have uniformly held, directly contrary to the so-called Massachusetts rule, since *Easton* v. *Medema, supra,* and in numerous cases involving children under the age of six years, have repeatedly held that such infants were incapable of contributory negligence as a matter of law. We have further found no ground advanced as a basis for the rule that is supported by reason, experience, observation or public policy, or a regard for the protection of the rights of infants. On other matters

closely associated with the question of contributory negligence of infants, such as the rule adopted in Massachusetts, imputing the contributory negligence of an adult in charge of the care of the child, to the innocent child itself, preventing in such cases any recovery by the child for injuries caused by a negligent defendant (*Brennan* v. *Standard Oil Co. of New York,* 187 Mass. 376 (73 N. E. 472); *Wright* v. *Railway Co.,* 4 Allen [Mass.], 283), we are not in accord. *Mullen* v. *City of Owosso,* 100 Mich. 103 (23 L. R. A. 693, 43 Am. St. Rep. 436); *Boehm* v. *City of Detroit,* 141 Mich. 277. "The strong objection to it, is its palpable injustice to the infant," *Bellefontaine & Indiana R. Co.* v. *Snyder,* 18 Ohio St. 399, 409 (98 Am. Dec. 175).

Because of the nature of reasoning, and because of the similar considerations of public policy and protection of infants' rights involved in rules adopted by different authorities as to the imputation of negligence to infants, and their capacity for contributory negligence, it is of interest in a discussion as to whether the common-law rule or the Massachusetts rule be followed in Michigan, to note the grounds advanced why we do not follow Massachusetts on the rule of imputing the negligence of a parent to an infant plaintiff.

In *Schindler* v. *Railway Co.,* 87 Mich. 400, Chief Justice Champlin said in speaking on this subject:

"There is no principle of justice which demands that the fault or want of care of one person shall be imputed to another, who is without fault or incapable of caring for himself, and thus excuse the fault or negligence of a person causing injury to an innocent party. The doctrine of imputed negligence punishes the innocent and permits the guilty to escape. * * * Parents or guardians may be negligent of their duty toward their offspring or wards, but this should not

be a reason for excusing the negligence of others towards innocent and unprotected children.''

In *Battishill* v. *Humphreys,* 64 Mich. 494, Justice MORSE said:

''The contrary doctrine would abandon *the young and helpless, whom the courts are bound to protect,* to the not always tender mercies of parents and guardians, and to wanton ill treatment and injury without hope of redress. * * * *The law aims to guard and shield children of tender years from the abuse of parents as well as of strangers.''* (Italics ours.)

It is somewhat illustrative of the fact that high authorities sometimes overlook obvious considerations in devotion to logical form, and apparent policy, that the eminent Judge COOLEY in defending the doctrine that public policy and reason require such imputation of negligence to an innocent child, says in his work upon Torts (1st Ed.), at page 682 (note):

''It is more likely to guard the interests of children and imbeciles than is the opposite. If a heartless parent may suffer a child to take his first lessons in walking in the crowded streets of a city, and then, when he is injured or killed, as in all probability he would be, may recover for such injury or killing on the ground that the child himself is too young to be chargeable with negligence, there will not, perhaps, be wanting depraved custodians of children, unrestrained by any considerations of humanity, willing enough to count upon probable gains from such reckless conduct.''

In answer to this reason for such a rule, Judge MORSE, in *Battishill* v. *Humphreys, supra,* said:

''But this argument must be predicated upon rare exceptions to the general rule of human conduct, and

presupposes cases where parents are willing to maim or murder their offspring from avaricious motives. While such extreme and wicked cases may exist, they are, in this enlightened age, and in our civilization, of very rare occurrence, and it will not do to found the policy of our law upon them.''

Caution is to be exercised in adopting rules which are said to be based on reason and logic, and unsupported by evidence, without reflecting on the degree of judgment exercised and the reasoning employed in arriving at such conclusions. A recent case holding that infants under the age of seven years are chargeable with contributory negligence, presumably based upon reason and logic, states that modern children of tender years have more opportunities to observe and be aware of danger because of the influence exercised upon them by moving pictures, radio, and other modern inventions and conditions. *Eckhardt* v. *Hanson,* 196 Minn. 270 (264 N. W. 776, 107 A. L. R. 1). But in our opinion, it cannot be said in view of distinguished authorities who hold contrary views that this is a matter of which a court can take judicial notice. Such statements are not generally accepted. One cannot say arbitrarily that the mental growth, intelligence, awareness, capability, and judgment of a modern child under seven years of age, are more developed because of such external stimuli. It is not agreed that the development of the child mentality depends upon such considerations. As has been stated by one authority, the growth of the child mind will be found to be a progression *in orderly relation to age,* from infancy to maturity.* It is said that it is because of his inherent weakness of attention, that the young child falls into many illusions of

---

* Infancy and Human Growth, Arnold Gesell.

sense perception;[*] and that in spite of children's tendency to experiment widely, they frequently do not see common objects with which they come in contact, unless such objects are pointed out to them and their most outstanding characteristics noted.[†] Where scientists will not draw a conclusion regarding the behavior of mice, or insects, except after thousands of experiments and observations over a period of years, it seems an essay of some intellectual temerity to assume to know the mysterious and complex factors operating upon the mind of a changing infant, which bring about increased intelligence, awareness, and change of behavior, when such conclusions are arrived at without any evidence whatever. We cannot assume that modern inventions advance the growth of mind or increase the awareness, of the child of tender years. There is as much basis for the belief that such development is directly dependent upon age, in these early years of such swiftly marked changes of physical growth.

\ This somewhat extensive reference to authorities outside the law, however, is not made for the purpose of establishing a rule but rather to justify and confirm an already established rule that seems to us not only to possess the virtue of approval of times past, but also to be founded upon reason and humane considerations. In a larger sense the burden of establishing the tenet that an infant, under seven years of age, is incapable of contributory negligence is not upon those who assert it. Above the cruelties and carnage of the centuries, history holds aloft the principle of such blameless early childhood. In civil law, in criminal jurisprudence, in the majority rule

---

[*] Psychology of Childhood (7th Ed.), Frederick Tracy.

[†] Psychology of Infancy and Early Childhood (1st Ed.), Ada Hart Arlitt.

of our State jurisdictions in matters relating to negligence, the incapacity of children of a certain age is recognized, whether it be a question of intention or inadvertence; and the long experience of humanity has recognized in matters of education, morals, and mental development, a definite age of transition from carefree infancy to that time when a sense of responsibility is born. To surrender that principle one must depart from the sentiments of the past,—not from an archaic rule—but from a vital and considered recognition of a transcendent element of human value. It seems, indeed, a paradox to hold the same child incapable of an act of wrongful intention but at the same time to hold him responsible for passive carefree inattention.

In our determination of this case we follow the common-law rule announced by the numerous authorities, entitled to eminent respect, which hold that an infant under seven years of age is incapable of contributory negligence. *McDonald* v. *City of Spring Valley, supra; Sexton* v. *Noll Construction Co.,* 108 S. C. 516 (95 S. E. 129); *Morris* v. *Peyton,* 148 Va. 812 (139 S. E. 500); *Siedlik* v. *Schneider,* 122 Neb. 763 (241 N. W. 535); *Johnson* v. *Herring,* 89 Mont. 420 (300 Pac. 535); *City of Shawnee* v. *Cheek,* 41 Okla. 227 (137 Pac. 724, 51 L. R. A. [N. S.] 672, Ann. Cas. 1915 C, 290); *Tupman* v. *Schmidt,* 200 Ky. 88 (254 S. W. 199); *Flickinger* v. *Phillips,* 221 Iowa, 837 (267 N. W. 101).

Such a doctrine recognized at a time when the harshness of the common law was untempered by equity, should not in these days be frittered away by the hazards of metaphysical reflection, or the necessarily dubious speculation of juries in such cases. This ancient bulwark and protection of little children is a vital safeguard of their rights and persons. It warns that no one can negligently cause

injury to a child of such tender years with impunity, by casting on his small shoulders the onerous burden of proving his own freedom from negligence.

In this State, our courts, nurturing the rights of infants, will not prescribe and require of them novel standards of care, as a condition precedent to reparation for injuries inflicted by careless wrongdoers, and will not exact from them more severe obligations of conduct than prevailed in the middle ages. In Michigan, the common-law rule is reaffirmed, and children under the age of seven years are conclusively presumed to be incapable of contributory negligence.

It follows that the action of the trial court in submitting infant plaintiff's contributory negligence to the jury for determination as a question of fact, was reversible error.

Plaintiffs sought to show the speed at which defendant was driving at the time of the accident, by Max Ballenger, a boy 14 years of age. This witness testified that he had observed the speedometers in automobiles in which he had ridden and that he could also give an opinion as to how fast defendant was going, based upon his experience in observing automobiles driven on the streets. When he was asked to give his opinion as to the speed of defendant's car at the time of the accident, the court sustained an objection made by defendant's counsel on the ground that the witness had not been qualified to testify to such a fact. This was erroneous. The witness under these circumstances should have been permitted to give an opinion. He was sufficiently qualified for this purpose; and the weight and credibility of such testimony were for the jury.

Other matters raised on appeal and discussed by counsel are not likely to arise on retrial and are un-

necessary to consider in view of our decision in the case.

Judgment reversed and new trial granted, with costs to plaintiff.

Bushnell, J., concurred with McAllister, J.

Wiest, C. J. I cannot join in the holding that a boy, six years and seven months of age,* cannot, under any circumstances, be guilty of contributory negligence as a matter of fact, nor can I subscribe to the statement that:

"In Michigan, the common-law rule is reaffirmed, and children under the age of seven years are conclusively presumed to be incapable of negligence."

The common-law rule with reference to non-responsibility of children under seven years of age, related to criminal acts and ought not, by analogy, because wholly lacking in similarity, be applied to negligence.

My Brother adopts the Illinois rule (*Maskaliunas* v. *Railroad Co.*, 318 Ill. 142 [149 N. E. 23]), of which it was said in *Eckhardt* v. *Hanson*, 196 Minn. 270 (264 N. W. 776, 107 A. L. R. 1):

"This rule has the merit of being easy to apply. However, it is arbitrary and always open to the objection that one day's difference in age should not be the dividing line as to whether a child is capable of negligence or not. Courts following the Massachusetts rule hold that the question of contributory negligence of a child under seven years of age is for the jury under proper instructions. *Johnson* v. *Railroad Co.*, 93 Vt. 132 (106 Atl. 682); *Sullivan* v. *Railway Co.*, 192 Mass. 37 (78 N. E. 382); *Hayes* v. *Norcross*, 162 Mass. 546 (39 N. E. 282); *Hirrel* v. *Lacey*, 274 Mass. 431 (174 N. E. 679); *Ritscher* v. *Railway*

---

* See footnote, *ante*, 461.—Reporter.

*Co.,* 79 N. J. Law, 462 (75 Atl. 209); *Edwards* v. *Railway Co.,* 21 S. D. 504 (110 N. W. 832); *Baker* v. *Railway Co.,* 79 N. J. Law, 249 (75 Atl. 441). * * *

"Under a proper instruction the Massachusetts rule is the more sound and the one most likely to insure just result. It does not cast upon the general public any and all risks that may be created by the carelessness of a child. Still it does not go so far as to hold a child to a degree of care not commensurate with its age and experience. Under present-day circumstances a child of six is permitted to assume many responsibilities. There is much opportunity for him to observe and thus become cognizant of the necessity for exercising some degree of care. Compulsory school attendance, the radio, the movies and traffic conditions all tend to have this effect. Under the Illinois rule a child may be guilty of the most flagrant violation of duty and still not be precluded from recovering damages for injuries suffered partly because of such violation. The Massachusetts rule contemplates justice for all parties, irrespective of age. Jurors, by virtue of their office, are competent to judge whether or not a child has exercised a degree of care commensurate with its age, capacity, and understanding. The Illinois rule has no basis in sound reason or logic. It is based upon an outworn historical rule of criminal law which refused to acknowledge any capacity on the part of any child under seven years of age to distinguish between right and wrong."

On this subject, see *Vitale* v. *Smith Auto Sales Co.,* 101 Vt. 477 (144 Atl. 380); *Mattey* v. *Whittier Machine Co.,* 140 Mass. 337 (4 N. E. 575) (child six years and seven months); *Rinaldi* v. *Levgar Structural Co.,* 97 N. J. Law, 162 (117 Atl. 42) (boy six years of age).

In *Milbury* v. *Turner Centre System,* 274 Mass. 358, 363 (174 N. E. 471, 73 A. L. R. 1070), the injured boy was five years of age, and was hit and in-

.jured by an automobile as he was crossing the street in a city.

Upon the question of contributory negligence of the boy, the court stated:

"Whether the plaintiff failed to use the care of one of his age and experience was, we think, for the jury. No serious contention was made that he was not of sufficient judgment to be alone upon the street. Certainly his conduct did not measure up to the care to be demanded of an adult. *Sullivan* v. *Chadwick*, 236 Mass. 130 (127 N. E. 632). The law does not require that it should. He was bound to use the care of a prudent boy of his age and experience."

See, also, *Adams* v. *Railway Co.*, 222 Mass. 350 (110 N. E. 965, L. R. A. 1917 F, 165).

Upon this point the court, in the case at bar charged the jury:

"I charge you that ordinary care has relation to the situation and condition of the parties, and varies according to the exigencies which require vigilance and attention, and when contributory negligence is sought to be attributed to a child, the child can only be held to that degree of care which may be reasonably expected from one under the same conditions and of the same sex, intelligence and judgment. I therefore charge you that the care and discretion to be used by the plaintiff in this case, Edmund Dean Tyler, a child of six years and nine months,* must be proportionate to his age and capacity to understand and ability to perform it, therefore in passing upon the question of whether or not the plaintiff was guilty of contributory negligence in this case you will consider all the testimony with relation thereto, his age, ability and intelligence and his experience to recognize and understand danger, and determine

---

* See footnote, *ante*, 461.—Reporter.

whether or not he conducted himself as a child of his age, ability and understanding would reasonably have been expected to, under like circumstances; and if he did, then he would not be guilty of contributory negligence. If, on the other hand, he failed to use that degree of care which a child of his age, ability and understanding would reasonably have been expected to exercise under like circumstances, then he would be guilty of negligence and if his negligence in that regard contributed to the accident, then he would not be entitled to recover."

We are not called upon to pass upon the age a child may be held guilty of contributory negligence as a matter of law.

I find reversible error in the exclusion of evidence and the judgment is reversed, with costs to plaintiff.

BUTZEL, SHARPE and CHANDLER, JJ., concurred with WIEST, C. J.

POTTER, J. (*dissenting*). My views were stated in *Easton* v. *Medema,* 246 Mich. 130. They did not prevail. The court announced a rule, supported neither by the canon law, the civil law, the common law, or other law, which excludes intelligence and experience in determining culpability and disregards the rule that everyone is bound to use that degree of care which a reasonably prudent person of like age, intelligence and experience should ordinarily use under like circumstances. A rule that age, not sense; years, not intelligence; length of life, not experience, should govern responsibility for human action is unsound and should be discarded.

NORTH, J., did not sit.